Tainter *v.* Winter.

———————◆———————

WYMAN V. TAINTER, *Treasurer, versus* WILLIAM WINTER.

A note payable by its terms to A. C. H., treasurer of the Ministerial and School Fund of C., or his successor, may be sued in the name of him who was the legal treasurer at the date of the writ, if the note was then and always had been the property of the trustees.

Where one of the signers makes a partial payment of a promissory note, and causes to be indorsed thereon that the payment was made by him, by name, and the holder of the note, relying upon such payment, permits the note to outlaw as to the other makers, the defendant will not be permitted to repudiate the payment as his own, and say it was done for another.

ON REPORT from *Nisi Prius*, BARROWS, J., presiding. ASSUMPSIT.

The writ, dated April 1, 1862, contained a count on the note hereinafter mentioned, together with a count for money had and received.

Plea, general issue and statute of limitations.

The following is a copy of the note declared on.

"Carthage, March the 20th, 1834.

"For value received, we jointly and severally promise to pay Abner C. Holman, Treasurer of the Ministerial and School Fund of Carthage, or his successor in that office, the sum of forty dollars, in one year from this date, and interest annually.                   "Samuel Gray,

   "Attest:                                   "John Gray,

   "Daniel Stickney."              ·     "Wm. Winter."

Harrison Storer, called by the plaintiff, testified that he was treasurer of the Ministerial and School Fund in Carthage, in 1844; that defendant, on March 16, 1844, paid

him, as treasurer, $1,20 on said note, which the witness indorsed at the time on the note in the following words and figures :—" March 16, 1844, received one dollar and twenty cents in part payment of the interest of the within note, by the hand of William Winter;" that, according to his best recollection, the indorsement was made at the request of the defendant, and he thinks the defendant stated that he wished it to be so made, that Samuel Gray might know it was paid *by defendant.*

The plaintiff introduced the records of the Trustees of the Ministerial and School Fund of Carthage, from which it appeared that Abner C. Holman was treasurer at the date of said note, and that the plaintiff was treasurer in 1862.

The defendant was introduced as a witness and testified that he never received any part of the consideration of said note, but signed it as surety ; that he never paid any part of said note from his own means ; that Samuel Gray, the first signer of said note, moved out of Carthage, and when he left town he was indebted to defendant and left with him some claims against the town, which the defendant was to collect and pay himself, and to pay over the balance on a note.

By sundry indorsements upon the note, the interest appeared to be paid to March 20, 1841.

By the agreement of the parties, the case was submitted to the full Court to be decided according to the legal rights of the parties ; the Court to draw such inferences as a jury might.

*Robert Goodenow,* for the plaintiff.

*S. Belcher,* for the defendant.

DANFORTH, J.—By the Act of Feb. 12, 1824, c. 254, § 2, the trustees of the Ministerial and School Fund are constituted and declared to be a body corporate. By the same section, it is made their duty, each year, to choose a treasurer. The note in suit is made payable to such treasurer

or his successor in office. The note is, and always has been the property of the trustees, and the plaintiff is the legal successor of the payee. Under these circumstances the action may be maintained in the name of the present plaintiff or in that of the corporation. *Fisher* v. *Ellis*, 3 Pick., 325; *Bank* v. *French*, 21 Pick., 491.

It is true, the note introduced in evidence varies somewhat from the one described in the writ, still it is sufficient to maintain the action under the count for money had and received.

The only other question relates to the effect of the payment indorsed March 16, 1844. Was this made by the defendant so as to avoid the statute of limitations? That the money was paid by him there can be no doubt. That the indorsement was made, as it now appears, at his request, would seem to be satisfactorily proved. He, then, made the payment for himself, and not in behalf of any other person. This fact remains the same and its effect is unchanged whether the money belonged to himself or another. So far as the plaintiff is concerned, it is just as much a payment by the defendant whether he appropriated the money for this purpose rightfully or wrongfully. He certainly did appropriate the money to his own use, both by his act and his request, thus renewing his contract; and now, after the plaintiff has rightfully relied upon his act so long that all other remedy has gone, it is too late for him to repudiate it and say it was done for another. *Howe* v. *Saunders*, 38 Maine, 350; *Holmes* v. *Durell*, 51 Maine, 201.

If, at the time, he had given notice and made the payment in behalf of Gray, a different question would have been presented.                    *Defendant defaulted.*

APPLETON, C. J., KENT, WALTON, BARROWS and TAPLEY, JJ., concurred.